**REDACTED**

████████████████

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| OYSTER OPTICS, LLC, | |
| *Plaintiff,* | 2:18-cv-00478-JRG |
| *v.* | |
| ALCATEL-LUCENT USA INC., | |
| *Defendant.* | |

**ALCATEL-LUCENT USA INC.'S OPPOSITION**
**IN RESPONSE TO PLAINTIFF'S MOTIONS *IN LIMINE* (DKT. 18)**

███████████

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... 2

TABLE OF EXHIBITS ............................................................................................................... 4

OPPOSITION TO MIL NO. 1: TO PRECLUDE INVALIDITY THEORIES NEVER
DISCLOSED IN INITIAL OR AMENDED INVALIDITY CONTENTIONS .......................... 1

OPPOSITION TO MIL NO. 2: TO PRECLUDE INVALIDITY TESTIMONY BASED ON
"BACKGROUND REFERENCES" IDENTIFIED DURING FACT DISCOVERY ................. 2

OPPOSITION TO MIL NO. 3: TO PRECLUDE UNTIMELY, ELEVENTH-HOUR
DISCLOSURE OF LONG-HELD PIRELLI PRIOR-ART WITNESSES, DOCUMENTS,
AND PRODUCT SAMPLES ....................................................................................................... 3

OPPOSITION TO MIL NO. 6: TO EXCLUDE EVIDENCE OF NO-LONGER-ASSERTED
PATENTS AND CLAIMS, PRODUCTS, AND/OR NON-ASSERTED INFRINGEMENT
THEORIES .................................................................................................................................. 5

OPPOSITION TO MIL NO. 7: TO PRECLUDE ANY REFERENCE TO OYSTER BEING
LITIGIOUS OR ITS BUSINESS MODEL BEING FOCUSED ON FILING LAWSUITS ....... 6

OPPOSITION TO MIL NO. 8: TO PRECLUDE ARGUMENT OR EVIDENCE ABOUT A
PARTY WITNESS'S INVOLVEMENT IN OTHER, UNRELATED CASES ......................... 7

OPPOSITION TO MIL NO. 9: TO EXCLUDE HEARSAY OPINION OF THIRD-PARTY
"EXPERT" .................................................................................................................................. 8

OPPOSITION TO MIL NO. 10: TO PRECLUDE REFERENCE TO DELAYED PAYMENT
OF PATENT MAINTENANCE OR CORPORATE FEES ........................................................ 9

OPPOSITION TO MIL NO. 11: TO PRECLUDE ███████████ AGREEMENT . 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Better Mouse Co., LLC v. SteelSeries ApS*,
  No. 2:14-CV-198-RSP, 2016 WL 3611560 (E.D. Tex. Jan. 5, 2016) ...................................2, 3

*Freeny v. Murphy Oil Corp.*,
  No. 2:13-CV-791-RSP, 2015 WL 11108703 (E.D. Tex. May 29, 2015) ..................................2

*Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
  318 F. Supp. 1116 (S.D.N.Y. 1970).....................................................................................7, 9

*Huawei Techs. Co. v. T-Mobile US, Inc.*,
  Case No. 2:16-CV-52-JRG-RSP, Dkt. No. 440 (E.D. Tex. Sept. 15, 2017) ...........................6

*iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*,
  No. 2:14-CV-01080-JRG-RSP, 2016 WL 3680064 (E.D. Tex. Mar. 24, 2016) ......................4

*Metaswitch Networks Ltd. v. Genband US LLC*,
  No. 2:14-cv-744-JRG-RSP, Dkt. No. 289 (E.D. Tex. March 1, 2016).....................................7

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
  No. 14-CV-03657, 2019 U.S. Dist. Lexis 120182 (N.D. Cal. July 18, 2019) ..........................6

*Pozen Inc. v. Par Pharma., Inc.*,
  2010 WL 11431483 (E.D. Tex. Jun. 8, 2010).......................................................................3, 4

*St. Lawrence Commc'n LLC v. ZTE Corp.*,
  No. 2:15-CV-349, 2017 U.S. Dist. Lexis 228923 (E.D. Texas Mar. 2, 2017) .........................7

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
  No. 6:11-CV-455, 2013 WL 5934471 (E.D. Tex. Sept. 11, 2013)...........................................2

*Ziilabs, Inc. v. Samsung Elecs., Co.*,
  2015 WL 7303352 (E.D. Tex. Aug. 25, 2015) ......................................................................3

RULES

FED. R. EVID. 801(d)(2) ..............................................................................................................9

FRE 403 ......................................................................................................................................6

**TABLE OF EXHIBITS**

**Exhibit A**:  Excerpt from Expert Report of Dr. George Papen Regarding Invalidity of U.S. Pat. No. 6,476,952; U.S. Pat. No. 6,594,055; U.S. Pat. No. 7,099,592; U.S. Pat. No. 7,620,327; and U.S. Pat. No. 8,374,511 (Jan. 10, 2018) ("Papen Rep.")

**Exhibit B**:  Excerpt from Transcript of the Deposition of Dr. George Papen (Feb. 7, 2018) ("Papen Dep. Tr.")

**Exhibit C**:  Order on Motions in Limine, *Huawei Tech. Co. Ltd. v. T-Mobile US, Inc.*, No. 2:16-cv-0052, Dkt. No. 440 (E.D. Tex. Sept. 15, 2017)

**Exhibit D**:  Excerpt from Alcatel-Lucent USA, Inc.'s P.R. 3-3 Invalidity Contentions (June 23, 2017) ("Alcatel's Invalidity Cont.")

**Exhibit E**:  Excerpt from Expert Report of Stephen E. Dell, CVA Relating to Alcatel-Lucent USA, Inc. (Jan. 10, 2018) ("Dell Rep.")

**Exhibit F**:  Excerpt from Transcript of the Deposition of Jeffrey Ronaldi (Dec. 6, 2017) ("Ronaldi Dep. Tr")

**Exhibit G**:  Excerpt from Expert Report of Dr. John Dallesasse Regarding Infringement of U.S. Patent Nos. 6,476,952; 6,594,055; 7,099,592; 7,620,327; and 8,374,511 by Defendant Alcatel-Lucent USA, Inc. (Jan. 10, 2018) ("Dallesasse Rep.")

**Exhibit H:**  Excerpt from Transcript of the Deposition of Stephen Eric Dell, CVA (Feb. 14, 2018) ("Dell Dep. Tr.")

Defendant Alcatel-Lucent USA Inc. ("ALU" or "Alcatel") respectfully opposes Plaintiff

Oyster Optics, LLC's motions *in limine* (Dkt. 18), as follows.

## OPPOSITION TO MIL NO. 1: TO PRECLUDE INVALIDITY THEORIES NEVER DISCLOSED IN INITIAL OR AMENDED INVALIDITY CONTENTIONS

Oyster seeks to exclude an anticipation theory that was expressly disclosed in the report of

Alcatel's invalidity expert, Dr. Papen, and about which he testified during his deposition.  Oyster's

motion is in reality an untimely motion to strike a portion of Dr. Papen's expert report.  The Court's

Amended Docket Control Order ("DCO") (in -1302) provides that motions to strike expert

testimony were due on or before February 26, 2018, and that no motion to strike expert testimony

could be filed after that date without leave of Court.  Dr. Papen's deposition was taken on February

7, 2018, well before the February 26 deadline.  Thus, Oyster was able but chose not to file a motion

to strike Dr. Papen's testimony as to the allegedly new anticipation theory.

The anticipation theory at issue was clearly and thoroughly addressed in Dr. Papen's

opening report.  Dr. Papen provides a detailed analysis as to how the Pirelli system and the RXT

module therein anticipate claims 5, 36, and 38 of the '327 patent.  (Ex. A, Papen Report ¶¶ 483-

563.)  Specifically, Section VIII(D)(a)(iv-viii) of his report explains how the Pirelli system

(including specifically the RXT module), alone, satisfies each element of claims 5 (¶¶ 483-544),

36 (¶¶ 547-62), and 38 (¶ 563).  At his deposition, Dr. Papen also explained that the headings for

these subsections inadvertently used the word, "obvious," instead of "anticipated."  (Ex. B, Papen

Dep. Tr. at 145:1-147:10.)  Oyster's motion improperly focuses on a typographical error and

ignores the actual substance of Dr. Papen's opinions—which indisputably contains a complete

analysis of the disclosure of every claim element by the Pirelli system.

Because this theory is plainly disclosed in his report, Oyster has no basis to challenge Dr.

Papen's testimony.  The relief Oyster seeks – to strike Dr. Papen's theory because Oyster believes

it was not sufficiently disclosed in invalidity contentions – is not appropriate in a motion *in limine*. That challenge—which would require more detailed briefing and would in any event fail on the merits—has been waived.  Oyster has offered no justification, much less good cause, for raising its challenges to Dr. Papen's testimony well after the deadline specified in the -1302 DCO.  Thus, Dr. Papen's testimony on these issues is appropriate and Oyster has waived any challenges it could have brought previously.  The Court should deny Oyster's MIL No. 1.

### OPPOSITION TO MIL NO. 2: TO PRECLUDE INVALIDITY TESTIMONY BASED ON "BACKGROUND REFERENCES" IDENTIFIED DURING FACT DISCOVERY

In its MIL No. 2, Oyster seeks to preclude ***any*** reliance by Alcatel and its expert on prior art references that are not included in Alcatel's election of prior art.  While such non-identified references will not be used as anticipatory prior art or as part of prior art combinations to prove obviousness, Oyster's request goes too far in that it would preclude Alcatel from even referring to this prior art to discuss the state of the art.  *See Freeny v. Murphy Oil Corp.*, No. 2:13-CV-791-RSP, 2015 WL 11108703, at *1 (E.D. Tex. May 29, 2015) (denying plaintiff's motion *in limine* to preclude testimony regarding any prior art references not listed in defendant's election of prior art).  This Court has found that reliance on unelected references for purposes of explaining the state of the art—or rebutting assertions relating to the value of the patent—does not violate an order that requires the parties to limit the references by which they will attempt to prove invalidity. *See Better Mouse Co., LLC v. SteelSeries ApS*, No. 2:14-CV-198-RSP, 2016 WL 3611560, at *1 (E.D. Tex. Jan. 5, 2016); *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2013 WL 5934471, at *1 n.1 (E.D. Tex. Sept. 11, 2013).

Alcatel's invalidity expert Dr. Papen relies on certain references to describe the state of the art relating to phase modulation at the time of the claimed invention of the '327 patent.  (*See* Dkt.

493, Mot., Ex. 4 ¶ 478 (describing the state of the art with respect to modulation techniques).)[1]

This reliance is within the scope of permissible use of unelected references. *See Better Mouse Co.*,

No. 2:14-CV-198-RSP, 2016 WL 3611560, at *1 (permitting the use of nonelected references

other than patent applications to demonstrate the state of the art). Oyster's motion to preclude *all*

*testimony* based on unelected references should therefore be denied.

## OPPOSITION TO MIL NO. 3: TO PRECLUDE UNTIMELY, ELEVENTH-HOUR DISCLOSURE OF LONG-HELD PIRELLI PRIOR-ART WITNESSES, DOCUMENTS, AND PRODUCT SAMPLES

Oyster seeks to preclude evidence that was expressly disclosed and relied on by Alcatel's

invalidity expert and is directly relevant to the prior art Pirelli System, which is a key part of

Alcatel's invalidity defense. Alcatel understands that Cisco has previously summarized the timing

and disclosure of the witnesses, the physical sample, and the documents Oyster now complains

about (*see*, *e.g.*, -1302 Dkt. No. 524 at 3-5). But Oyster's arguments do not apply to Alcatel.

Alcatel sought this information from Cisco, disclosed to Oyster the documents, witnesses, and the

physical sample as soon as Alcatel learned of them from Cisco, and therefore timely disclosed the

system to Oyster. Thus, Oyster cannot allege any "lack of diligence" on behalf of *Alcatel*.

Moreover, Oyster bases this motion *in limine* on a slew of belated and backdoor discovery

grievances—raised for the first time at the eve of trial—under the guise of motion *in limine*

practice. Oyster's motion does not contend that the evidence is not relevant or probative. Nor can

Oyster dispute that the pertinent material was in Alcatel's invalidity contentions and expert report

on invalidity (Ex. D, Alcatel Invalidity Cont. at 14, 19-20; Ex. A, Papen Rep. ¶¶ 483-563; Dkt.

---

[1] Similarly, this Court has repeatedly allowed experts to discuss references beyond those used for invalidity arguments as they relate to "(1) background material relevant to the technology at issue; (2) state of the art; and (3) establishing what one of skill in the art would have known at the time of the invention." *Ziilabs, Inc. v. Samsung Elecs., Co.*, 2015 WL 7303352, at *2 (E.D. Tex. Aug. 25, 2015); *see also Pozen Inc. v. Par Pharma., Inc.*, 2010 WL 11431483, at *8 (E.D. Tex. Jun. 8, 2010).

493, Mot., Ex. 3), and that Oyster did not move to strike either of those.  Oyster does not suggest there is anything unduly prejudicial about the evidence itself—all this evidence is relevant only to the Pirelli prior art system of which Oyster was well aware and does not cause any prejudice to Oyster.

In its initial invalidity contentions dated June 23, 2017, Alcatel disclosed the Pirelli System as prior art and incorporated by reference Cisco's invalidity contentions.  (Ex. D, Alcatel Invalidity Cont. at 7, 14, 19-20.)  Cisco investigated the Pirelli System and provided to Alcatel and Oyster further information regarding witnesses having knowledge of the Pirelli System (Mr. Bonato and Mr. Gazzola), as well as additional documents relating thereto, all with at least three weeks of fact discovery left and twelve weeks prior to the close of expert discovery.  Those witnesses, documents, and hardware properly corroborate and supplement the Pirelli System, of which Oyster long had notice, and are reflected in Alcatel's expert report on invalidity.  (Ex. A, Papen Rep. ¶¶ 483-563; Dkt. 493, Mot., Ex. 3); *Pozen Inc. v. Par Pharm., Inc.*, No. 6:08-CV-437, 2010 WL 11431483, at *5 (E.D. Tex. June 8, 2010).

Moreover, Oyster had ample time to depose the Pirelli witnesses in fact discovery, but declined. In any event, *after* final judgment was rendered in the -1302 litigation, on May 29 and May 30, 2019 Oyster *took the depositions* of the Pirelli witnesses, Mr. Bonato and Mr. Gazzola (notably, without informing Alcatel that the depositions were occurring), as part of its co-pending litigation with Infinera Corporation. As a result, any Oyster-perceived prejudice has long since been cured. And Oyster also had a full opportunity to depose Dr. Papen as to what information they told him, the Pirelli documents that he relied upon, and the Pirelli hardware he detailed in his expert report. *iFLY Holdings LLC v. Indoor Skydiving Germany GmbH*, No. 2:14-CV-01080-JRG-RSP, 2016 WL 3680064, at *2 (E.D. Tex. Mar. 24, 2016).  Regarding the physical sample, it was

made available to Oyster during fact discovery and inspected by Oyster's invalidity expert.  This sample is part of the prior art system charted in Defendants' invalidity contentions; was inspected by all party experts on the issue of validity and by Oyster's counsel before the expert report deadlines; and forms significant parts of all expert reports on the issue of validity.  For the documents, Alcatel produced all of the Pirelli prior art documents it had located at the time invalidity contentions were served in June 2017, and Alcatel continued to provide Oyster with notice of the documents as they became available to Alcatel.

In sum, this motion in *limine* does not apply to *Alcatel* because Alcatel diligently sought information about the Pirelli system from Cisco, told Oyster everything Alcatel knew about the Pirelli system as soon as Alcatel knew about it, and gave Oyster everything Alcatel had about the Pirelli system as soon as Alcatel had possession of it.  If Oyster had any reasonable concerns about Alcatel's disclosure, it should have resolved those concerns through timely meet and confers, requests for deposition, and if necessary, a timely discovery motion or motion to strike.  It did not take any of these steps and any prejudice to Oyster has long-since been cured by subsequent events. The evidence is relevant and probative, and, accordingly, this motion *in limine* should be denied.

### OPPOSITION TO MIL NO. 6: TO EXCLUDE EVIDENCE OF NO-LONGER-ASSERTED PATENTS AND CLAIMS, PRODUCTS, AND/OR NON-ASSERTED INFRINGEMENT THEORIES

Oyster seeks to exclude references to "no-longer asserted patents and claims."  As worded, such a broad ruling would be inappropriate because a specific set of facts may be highly relevant (and not unduly prejudicial) to the credibility of Oyster's expert report on damages.  Oyster originally asserted infringement of 8 patents.  Prior to expert discovery, Oyster dropped the '816, '898, and '012 patents.  Alcatel agrees not to reference Oyster's decision to drop these 3 patents.

Alcatel should be permitted, however, to discuss the five patents that were still in the case as of the opening of expert discovery because Oyster's assertions of them are pertinent to damages

issues.  In his opening expert report, Oyster's damages expert (Stephen Dell) stated that he had been retained to calculate Oyster's reasonable royalty damages resulting from the alleged infringement by Alcatel of the '952, '592, '055, '327, and '511 Patents.  (Ex. E, Dell Rep. ¶ 1.) Although Mr. Dell described benefits that apply only to certain patents, he chose to treat all five collectively and gave only one damages number for all five patents.  But now Oyster has dropped four additional patents and asserts only the '327 patent against Alcatel.

To the extent Mr. Dell is permitted to testify as to certain of his flawed opinions, Alcatel should be permitted to cross-examine him on his opinions (or lack thereof) with respect to the impact that Oyster's decision to drop the '511, '592, '952, and '055 patents has (or does not have) on his proposed damages analysis.  There is no prejudice, let alone undue prejudice, that would warrant the exclusion under FRE 403.  *See Huawei Techs. Co. v. T-Mobile US, Inc.*, Case No. 2:16-CV-52-JRG-RSP, Dkt. No. 440, at 7 (E.D. Tex. Sept. 15, 2017) (attached as Exhibit C) ("[W]hile reference to a party's decision to narrow its case is typically precluded under Rule 403, the patents dropped in this action are integral to [Defendant's] and Intervenors' response to [plaintiff's expert's] damages opinion.").

## OPPOSITION TO MIL NO. 7: TO PRECLUDE ANY REFERENCE TO OYSTER BEING LITIGIOUS OR ITS BUSINESS MODEL BEING FOCUSED ON FILING LAWSUITS

In its MIL No. 7, Oyster seeks to preclude Alcatel from introducing evidence relating to Oyster's prior lawsuits and its business model being focused on litigation.  As Oyster points out, Alcatel has agreed to refrain from using pejorative terms such as "troll" and "pirate," which courts have restricted under FRE 403.  But neutral, factually accurate descriptions of a patentee's business model and status as a "non-practicing entity" are relevant and appropriate.  *See MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, No. 14-CV-03657, 2019 U.S. Dist. Lexis 120182, at *4 (N.D. Cal. July 18, 2019)("However, Micron will be permitted to use more neutral terms

such as 'non-practicing entity' when referring to MLC."); *St. Lawrence Commc'n LLC v. ZTE Corp.*, No. 2:15-CV-349, 2017 U.S. Dist. Lexis 228923, at * 12 (E.D. Texas Mar. 2, 2017)("This *limine* would not exclude evidence or testimony that 'St. Lawrence is a patent assertion entity that does not manufacture or sell products in this field.'")

Oyster's primary business activity being litigation, rather than commercialization of the claimed technology, is relevant both to determining any damages calculation and to describing the relationship between Oyster and its actual or potential licensees.   Indeed, Oyster's business operations through litigation and licensing clearly bears on *Georgia-Pacific* Factors 5 and 6.   *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) ("5. The commercial relationship between the licensor and licensee, such as, whether they are competitors in the same territory in the same line of business; or whether they are inventor and promoter. 6. The effect of selling the patented specialty in promoting sales of other products of the licensee; that existing value of the invention to the licensor as a generator of sales of his non-patented items; and the extent of such derivative or convoyed sales.").   Because Oyster's commercialization capabilities and relationship with Alcatel and other defendants are relevant, there is no basis to exclude accurate and neutral references to Oyster's business model.

## OPPOSITION TO MIL NO. 8: TO PRECLUDE ARGUMENT OR EVIDENCE ABOUT A PARTY WITNESS'S INVOLVEMENT IN OTHER, UNRELATED CASES

It is entirely proper for Alcatel to elicit factual statements about Mr. Ronaldi's current and prior employment history.   *See Metaswitch Networks Ltd. v. Genband US LLC,* No. 2:14-cv-744-JRG-RSP, Dkt. No. 289, at 7 (E.D. Tex. March 1, 2016) ("Parties may make factual statements about prior employment history.").   Mr. Ronaldi explained at his deposition that he is currently a member of several existing companies, and that he testified as a corporate representative for those companies in patent litigation lawsuits.   (Ex. F, Ronaldi Dep. Tr. at 26:15-17; 60:2-3; 65:1-10;

79:7-10.)  It is not unusual or prejudicial for parties to ask witnesses about their current and past responsibilities, including whether they had previously testified as a corporate representative. Moreover, in light of the number of times Mr. Ronaldi has testified, Alcatel should be permitted to test Mr. Ronaldi's credibility as a corporate witness by showing his history acting in that role. Indeed, parties routinely test the credibility of witnesses by asking about their prior testifying experience and on which side they testified.[2]

Contrary to Oyster's suggestion, Mr. Ronaldi's corporate representative status with companies other than Oyster does not "support . . .  the implication that *Oyster*" is "unreasonably or excessively litigious" (Dkt. 493, Mot. at 12).  Mr. Ronaldi is not testifying about lawsuits he has been involved with on behalf of Oyster that could lead to the implication that Oyster is unreasonably litigious.  And it is Oyster who made the choice to present Mr. Ronaldi as its corporate representative.  Oyster cannot now use that choice as a shield.  Alcatel should therefore be permitted to test the credibility of Oyster's chosen witness using his current and former employment history.

## OPPOSITION TO MIL NO. 9: TO EXCLUDE HEARSAY OPINION OF THIRD-PARTY "EXPERT"

Oyster's motion to exclude any evidence or opinions based on Dr. R. Brown's statements in response to technology questions from Werner Paulus, a significant initial investor in Oyster Inc., should be denied.  In its motion, Oyster points to Ex. 13 and 14 (of Dkt. No. 18).  Oyster's Ex. 13 is an excerpt of a memorandum from Peter Snawerdt—CTO of Oyster, Inc.—responding to issues raised by Mr. Paulus, who had provided Dr. R. Brown's statements to Oyster Inc., and Ex. 14 is Mr. Snawerdt's testimony about the memo.  In the memo, Mr. Snawerdt quotes and then

---

[2] In its re-filed Motion, Oyster makes the baseless assertion that Alcatel intends to refer to Mr. Ronaldi as a "hired gun" at trial.  This is not correct.

responds to Dr. Brown's criticisms of Oyster Inc.; by providing his own responses to Dr. R. Brown, Mr. Snawerdt adopts the existence of Dr. R. Brown's statements and explains Oyster Inc.'s official position. Given Mr. Snawerdt's position as an Oyster Inc. officer and significant shareholder of Plaintiff, his memo is undeniably an admission of a party opponent, not hearsay. FED. R. EVID. 801(d)(2). Also, Mr. Snawerdt's memo is a record of a regularly conducted activity: he responded to an investor's questions in the ordinary course of his business, and the memo is not hearsay on this basis as well. *Id.* 803(6).

The memo and statements are also highly relevant to, at least, the hypothetical negotiation between the parties, the *Georgia-Pacific* factors, and the value of Oyster's technology as perceived by Oyster Inc. and a potential investor. Factor 9 relates to the utility and advantages of the patented invention over the old modes or devices, and factor 10 relates to the nature of the patented invention; the character of the commercial embodiment of it by the licensor; and the benefits to those who used it. The memo and statements directly relate to these factors.

Further, the memo and statements are relevant to rebutting Oyster's assertions as to the historical perceptions of and reactions from others as to the value of the patents and underlying technology and Oyster's ability to raise funds. For example, Oyster contends its technology was highly valuable, but it could not get funding due to the dot.com bubble bursting. Alcatel can demonstrate otherwise through Mr. Snawerdt's memo and Dr. Brown's statements adopted therein.

**OPPOSITION TO MIL NO. 10: TO PRECLUDE REFERENCE TO DELAYED PAYMENT OF PATENT MAINTENANCE OR CORPORATE FEES**

Alcatel does not oppose this Motion as Oyster is not asserting the '952 patent in the -478 litigation.

███████████████

**OPPOSITION TO MIL NO. 11: TO PRECLUDE** ███████████████ **AGREEMENT**

Oyster's motion *in limine* should be denied because Oyster received ███████████████ along with other documents well before any expert reports were served and never complained or requested additional deposition testimony.  Oyster made the calculated decision not to share those documents with its damages expert Mr. Stephen Dell, and it should not be heard to complain because it now regrets that decision.

Oyster cannot credibly claim any prejudice in the timing of this production.  On the same day that ALU ███████████████, ALU also produced a technical document which Oyster choose to rely on in its infringement expert's opening report.  Specifically, Oyster's infringement expert Dr. Dallesasse considered the technical document in depth with his expert report containing over 13 citations thereto as supporting his infringement opinions.  (Ex. G, Dallesasse Rep. ¶¶ 85, 218, 220, 224, 226, 251, 269, 288, 293, 296, 300, 302 & 334 (citing ALU-OYS_0195027).)  Oyster thus considered ALU's production of documents and strategically chose what to include in its expert reports and what to strategically ignore.  Mr. Dell confirmed in his deposition that Oyster's counsel had not made him aware of ███████████████ when it was produced.  Instead, he first learned of ███████████████ when reading the expert report of Mr. Fancher, then ALU's damages expert.  (Ex. H, Dell Dep. Tr. at 206:10-211:1 (testifying that Oyster's counsel had not provided him ███████████████ prior to Mr. Fancher's report).)  And having reviewed ███████████████, he provided his opinion of that agreement during his deposition.  (*Id.* at 212:12-213:11 (analyzing ███████████████████████████████ ███████████████

Further, Mr. Stephen Dell served a supplemental expert report on January 30, 2018 in order to address documents that Oyster failed to timely identify.  Those documents, the WTAS Tax documents, were produced *20 days after* ███████████████  If Mr. Dell could adequately

██████████████████

address the WTAS Tax documents in his supplemental report, he certainly had the opportunity to

address whether ███████████ impacted his opinion in his supplemental expert report.[3]

     In sum, ALU produced ███████████ before any expert reports were submitted, and

Oyster had ample opportunity to address it.  Any prejudice Oyster alleges to have suffered is due

to its own making, and Oyster should not benefit from that strategic choice.

Date:  June 9, 2020                     Respectfully submitted,

*/s/ M. Scott Stevens*
Deron Dacus
Texas State Bar No. 790553
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, TX 75701
Telephone: (903) 705-1117
Facsimile: (903) 581-2543
Email: ddacus@dacusfirm.com

Michael E. Jones
**Potter Minton, a Professional Corporation**
110 N College Avenue
Suite 500
Tyler, TX 75702
Telephone: 903-597-8311
Facsimile: 903-593-0846
mikejones@potterminton.com

John D. Haynes (GA Bar No. 340599)
Michael C. Deane (GA Bar No. 498195)
**ALSTON & BIRD LLP**
1201 West Peachtree Street
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
John.Haynes@Alston.com

---

[3] Moreover, Oyster's claims that ALU intentionally delayed production of ███████████ are also unfounded.  ALU produced ███████ within one day of identifying it.  ALU, in the ordinary course of business, ███████████████. ███████████, however, was inadvertently indexed improperly and was therefore not captured in ALU's initial ███████.  ALU did not identify ███████ as relevant to this case until January 8, 2018.  Upon its identification of ███████████ ALU produced it the very next day.

Michael.Deane@Alston.com

M. Scott Stevens (NC Bar No. 37828)
**ALSTON & BIRD LLP**
101 South Tryon Street, Suite 4000
Charlotte, NC 28280
Telephone: (704) 444-1025
Facsimile: (704) 444-1935
Scott.Stevens@Alston.com


***ATTORNEYS FOR DEFENDANT
ALCATEL-LUCENT USA INC.***

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

I hereby certify that pursuant to Local Rule CV-5(a)(7)(B) that on May 18, 2017, the

Court entered a Protective Order (Dkt. No. 95) authorizing the filing of documents designated

pursuant to the Protective Order under seal.

Dated: June 9, 2020

*/s/ M Scott Stevens*
M. Scott Stevens

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this day, a true and correct copy of the foregoing document

and a notice of filing of this document, under seal, pursuant to Local Rule CV-5(a)(7) were

served by electronic mail to the persons at the addresses below:

| | |
|---|---|
| Marc A. Fenster<br>E-mail: mfenster@raklaw.com<br>Reza Mirzaie<br>E-mail: rmirzaie@raklaw.com<br>Amir A. Naini<br>Email: anaini@raklaw.com<br>Neil A. Rubin<br>Email: nrubin@raklaw.com<br>Arka Chatterjee<br>E-mail: achatterjee@raklaw.com<br>Stanley H. Thompson, Jr.<br>Email: sthompson@raklaw.com<br>RUSS, AUGUST & KABAT<br>12424 Wilshire Boulevard<br>12th Floor<br>Los Angeles, CA 90025<br>Telephone: 310/826-7474<br>Facsimile: 310/826-6991<br><br>T. John Ward, Jr.<br>E-mail: jw@wsfirm.com<br>Claire Abernathy Henry<br>E-mail: claire@wsfirm.com<br>Andrea L. Fair<br>E-mail: andrea@wsfirm.com<br>WARD, SMITH & HILL, PLLC<br>P.O. Box 13231<br>Longview, Texas 75601<br>Tele: 903/757-6400<br>Facsimile 903/757-2323<br><br>Attorneys for Plaintiff<br>OYSTER OPTICS, LLC | |

Dated: June 9, 2020

*/s/ M Scott Stevens*
M. Scott Stevens